This suit arises as a result of an accident which the plaintiff Miller had with a "Chris-Craft" motor boat at or near the mouth of the Tangipahoa River on August 14th, 1946. The plaintiff Baer was the owner of this "Chris-Craft" motor boat and he and Miller had arranged to go on a fishing trip with some of their friends on the date of the accident, but Baer was unable to make the trip so Miller, together with the friends and with Baer's consent, took the boat and had almost arrived at the mouth of the Tangipahoa River when the boat either struck a submerged obstacle or screws holding the propellor strut came loose, which resulted in tearing a hole in the botton of the boat and from which the boat sank. The next day Miller explained the situation to Baer, the owner of the boat, and assumed the responsibility of getting the boat back to Madisonville, a distance of approximately 15 miles, and also assumed the liability for repairing the damage occasioned by the accident and sinking of the boat.
Plaintiffs Miller and Baer alleged that the defendant Chatellier agreed to salvage the boat and did place the boat on the ways at his shipyard at Madisonville; that thereafter Miller entered into negotiations with Chatellier to repair all items of damage caused by the accident and sinking of the motor boat, and that Chatellier agreed to do this work for a sum not to exceed $50.00, exclusive of the necessary work on the motor and the purchase price of a new shaft. The petition further alleges that Baer entered into a contract with defendants to do certain repairs such as repainting, revarnishing of the cabin, new canvas, replacing two planks in the side of the boat and other repairs as shown by the petition upon which he, Baer, placed an absolute limitation of $250.00 to $275.00 and which Chatellier accepted and agreed to do; that when the bill was presented, Chatellier, contrary to his agreement, claimed that Miller owed him a balance of $332.01 for labor and material plus 15% to cover cost of taxes, Social Security, etc., and that Baer owed defendant Chatellier $607.14 balance for labor and material and plus 15% for insurance, taxes and profit. The plaintiffs made the further allegations:
"XXII. That the said Miller, being entirely ignorant of repairing boats, and being in the predicament above set out, was lulled into a feeling of security by the promises and representations of the said Chatellier, particularly as the said Chatellier pointed out a speed boat then operating in the river, which Chatellier said belonged to a "Nick" Skirmetta, which had been entirely overhauled by Chatellier at a cost of Four Hundred ($400.00) Dollars, particularly requesting observation thereof, and continually lulling petitioner Miller into a sense of security by his references to the quality of the work done on the boat shown together with econimums as to the quality of the work which went into it, together with the reasonable price charged."
"XXIII. That thus being lulled into a sense of security, the said Miller then and there agreed with M.F. Chatellier to repair the damaged planks, to clean the boat, to have the engine overhauled and to replace *Page 800 
the bent propellor shaft, particularly and expressly stating that he wished done only what was absolutely essential to repair the damage caused by the accident and nothing more, to which M.F. Chatellier agreed."
"XXXVI. Your petitioners now charge that these defendants and each and every one of them, acting together and in concert, knowing that petitioners were completely ignorant of the repairs, etc., of boats and knowing the confidence imposed in them by the said petitioners conspired together with each other to pad the bills on the boat, to charge for work not performed, to charge for things not furnished and to violate the confidence imposed in them by rendering unconscionably huge bills and to cheat and defraud petitioners."
"XXXVII. Your petitioners now show that in consequence of this said conspiracy the said boat was held at the ship yard of M.F. Chatellier for an undue length of time, that innumerable hours of work not performed were charged for, that great quantities of work not done were charged for, that supplies and materials not furnished were charged for and that exhorbitant bills were rendered for a relatively small amount of work."
"XXXVIII. That each and every one of the defendants herein knew or should have known that petitioners were interested only in a small job, at the most conservative of prices, for the reason that one was paying for an accident and the other did not wish improvements upon the boat as the same was then being offered for sale, all of which was well within the knowledge of these defendants and each of them."
"XXXIX. That all of this was done by the defendants herein and each of them well knowing that Miller, being in his own mind, morally responsible to Baer for the results of the accident, would, as they thought, stand any amount of injustice and fleecing rather than lose the friendship and regard of Baer, and that therefore they took occasion to pad both bills as above set out."
"XL. That on November 30th, 1946, the said M.F. Chatellier came to the office of the said Miller to demand that the work done on the boat be paid for, and exhibited to and delivered to the said Miller a bill for his, Miller's, share of the said work, and a copy of a bill to Baer for his share, charging the said Miller for 294 hours of work, plus materials, and charging Baer for 610 hours of work for certain materials and extra charges."
"XLIII. That at the same time, the said Chatellier, threatened Miller that if the bills were not immediately paid, that the boat would be libelled by the said Chatellier and his co-defendants herein through the United States Courts, this threat being used to force Miller to accede to these unconscionable demands of the defendants herein, the said Miller being in the position that he would have to placate the said Baer for the damages to his boat, and that thereby he, Miller, would be accede to the threats and demands of the defendants herein."
The record shows that on November 30th, 1946, that the defendant Chatellier presented Miller with a bill for Baer and also a separate bill for Miller which bills are annexed to plaintiffs Miller's and Baer's petition and to defendant Chatellier's answer and reconventional demand; that on the same day defendant Chatellier threatened to libel the boat and Miller contends that he felt it necessary to file the present suit in order to prevent such action. He has therefore filed this suit claiming that he, Miller, has overpaid his account by $77.61 and seeks to recover this amount from M.F. Chatellier and all the men that worked on the boat, and the plaintiff Baer alleges that he owes a balance of $170.00 and has deposited this amount in the registry of the Court and he seeks the recovery of the boat in question which was in the possession of the defendant, Chatellier. In addition, plaintiffs also sequestered the boat.
The defendant, M.F. Chatellier answered the suit denying that the contract was as alleged by Miller and Baer, but the other defendants who worked on the boat did not file any answer whatever to this suit.
This suit is properly between the plaintiffs Miller and Baer on one hand and M.F. Chatellier on the other, for the *Page 801 
record discloses that they are the parties who made whatever contract was entered into relative to the repairs on the said boat.
Defendant Chatellier denies that he agreed to do the repairs on the boat occasioned by the sinking for a sum not to exceed $50.00 exclusive of the motor and shaft, and he also denies that he agreed to make other repairs such as repainting and replacing old canvas with new canvas, etc., on the boat for the plaintiff Baer for a maximum charge of $275.00, it being his contention that he undertook to do the necessary repairs on the boat on a cost plus basis, that is to say that the said Miller and Baer would meet the payroll expenses involved in such repairs at the end of each week and that at the end of the contract there would be a plus for him personally to take care of insurance, taxes, overhead and profit. Accordingly, he has filed a reconventional demand seeking the recovery of $382.01 less a credit of $50.00 paid on account, or a total of $332.01 against the plaintiff Miller, and the recovery of $790.56 less $105.00 paid on account of a balance due of $685.56 from the plaintiff Baer.
The case was duly tried and the lower court filed written reasons for judgment. There was judgment in favor of the defendant in suit and plaintiff in reconvention, Mose F. Chatellier, and against the plaintiff Michael S. Baer for the full sum of $592.67 together with legal interest from November 11, 1946, and against the plaintiff Benjamin W. Miller for the full sum of $286.64 together with legal interest from November 26, 1946, plaintiffs to pay all costs of suit.
Plaintiffs have appealed from the judgment and the defendant Mose F. Chatellier has answered the appeal asking that the judgment be increased so as to include plus 15% which was disallowed by the trial court as that Court held that the contract was not on a cost plus basis.
Miller, either the 15th or 16th of August, contacted the defendant M.F. Chatellier at Madisonville relative to raising the boat and towing it to the shipyard of the said Chatellier in order that it might be repaired. Chatellier agreed to raise the boat, not on a contract basis but stated that he would salvage the boat, giving as his reason that should he contract for this service that if he lost the boat on the way to Madisonville he would be liable for the boat. Miller testified that Chatellier agreed to charge $100.00 for this service but Chatellier denies that he agreed to this specific charge, stating that he only agreed to charge a fair price, giving as his reasons:
"We had to go nine miles down the lake, tow the boat to Madisonville and haul it on the ways, plus the expense of the other two trips."
Miller paid him $150.00 for this service. On August 17th, 1946, plaintiff Miller went to Madisonville and entered into a discussion with Chatellier relative to repairing the damage to the boat which was done by the sinking. It is Miller's contention that although Chatellier did not make a dollar and cent agreement on the work, he, however, agreed that it would not exceed $50.00, exclusive of the repair to the motor, which motor work cost $22.39, and the cost of a new shaft which cost $11.75, there being no dispute as to either of the latter two items.
Shortly thereafter, the owner of the boat, Baer, decided that he would like to sell the boat, and therefore, while the boat was on the ways, he would have some additional work done such as painting, etc. The contention of plaintiff Baer is that while Chatellier did not make a dollar and cent bid that he, Baer, placed a limitation on the cost of this work of the sum not to exceed $250.00 to $275.00, and that this limitation was accepted by Baer.
Both parties have agreed that the law applicable to this case is Article 2277 of the Revised Civil Code which reads as follows:
"2277 (2257) (N 1341, 1347) Agreement relative to movable property or for payment of money — Proof — All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, *Page 802 
above five hundred dollars in value, must be proved at least by one credible witness, and other corroborative circumstances."
Plaintiffs herein are contending that they have "declared upon a contract, verbal in nature, divided into two parts, one as to Miller, one as to Baer, with the consideration of both contracts amounting to less than $500.00."
According to the record, there were two contracts, one between Miller and Chatellier with regard to repairing all damages done by the accident and sinking of the boat, and one between the plaintiff Baer and Chatellier for certain other repairs to the boat. As it is necessary to render two separate and distinct judgments in this case, it will therefore be proper to consider each contract separately.
We will first take up the issues between plaintiff Miller and the defendant and plaintiff in reconvention, Chatellier, and we deem it advisable in this particular case to quote verbatim quite a bit of the testimony.
On Page 1 of the testimony, Miller testifies:
"A. * * * On Monday, August 19th, I went back and stopped for a few minutes and talked about the boat. We did not talk much about it then, and on Wednesday, August 21st, Mr. Ray Willis and I went down to go over the boat, Mr. Willis acting for Mr. Baer, and Mr. Chatellier could not tell us very much. He said the engine would have to be inspected and maybe some new parts, that it would have to be washed out and lubricated and stated that he did not know whether he would be able to straighten the brace shaft which runs from the engine to the propellor, it would have to have a new one, and could not tell if the rib was broken. At that time I stressed to Mr. Chatellier the fact I wanted to get out as easy as I could and Mr. Willis said the boat was up being advertised for sale, that he did not want to spend any money on it. * * *
"A. * * * On Thursday I came back again and Mr. Chatellier was willing to talk business at that time, I was not. My daughter was being married on the 24th. The only time I was at the shipyard and they were working on that boat was that day and somebody was there with a box of Oxydol washing on the inside of the boat.
"Q. At the time of this conversation and after the boat was raised from the water and brought to Madisonville, was any specific work outlined as to what was to be done right then? A. Yes, sir. On Monday August 26th, Mr. Willis had in his possession a letter from Mr. Baer authorizing him to be his agent. What was to be done for my account was cleaning, two planks 3 to 4 feet long to be replaced on the boat, replace the propellor shaft, clean, oil and lubricate that motor and Mr. Chatellier said at that time that the heaviest item of cost of the whole business was going to be repairing that motor, and it was going to be not more than Fifty Dollars ($50.00) exclusive of that shaft and motor work. That was on the 26th.
"Q. What do you mean by exclusive of the shaft? A. He did not know what the shaft was going to cost. He said he could not work on the motor, that he would have to send it to somebody's garage, the name sounded like Newman.
"Q. What was the price, if any, fixed as to the cost of what you were to have done? A. No definite dollar and cents figure was given. Mr. Chatellier refused to do that, giving as his reason that he might find something else. However, the outside figure was not to be over Fifty Dollars ($50.00) exclusive of the cost of that shaft, its purchase price and what was to be done to the motor."
Mr. Ray Willis on Page 8 testified as follows:
"A. * * * Later, I talked with Mr. Chatellier and he told me he was going to do Mr. Miller's work on there and it should not exceed $50.00."
And again on Page 9:
"Q. As to the extent of damages caused by that accident you are not in position to testify? A. Mr. Chatellier said it would not exceed $50.00 to put it in the condition it was before it sank."
Thus, taking the testimony of the plaintiffs and their witnesses, the defendant Chatellier did not agree to repair the damage to the boat caused by the accident *Page 803 
for a sum not to exceed $50.00. It will be noted that Willis was with Miller on August 26, 1946 when he, Miller, testified that this agreement was made with Chatellier. However, Willis testified to the effect that Chatellier said "it should not exceed $50.00," "it would not exceed $50.00," but no where does he testify that Chatellier agreed to repair this boat for a cost not to exceed $50.00 nor did Miller impose a $50.00 limit on Chatellier. Taking all the testimony in the case, there is no doubt that the conversations between the plaintiffs and Chatellier and Willis Chatellier took place as testified to, for there is certainly nothing in the record to indicate that Miller and Baer and the other witnesses offered by plaintiffs perjured themselves. Taking the testimony heretofore quoted as true, there is no doubt that Chatellier was evasive and misleading and it is therefore easy to understand the consternation of plaintiffs upon receiving the bills which are annexed to plaintiffs' petition.
The defendant Chatellier denies that he ever entered into such a contract with Miller and, on the contrary, contends that the work was to be done on a cost-plus basis. The District Court flatly rejected Chatellier's contention as to both contracts and we think correctly so and will hereinafter discuss it more fully.
Taking all the testimony, we cannot say that Chatellier agreed to make the repairs for Miller for the flat sum of $50.00 or for a sum not to exceed $50.00, and certainly Miller did not impose, and does not so contend, a limitation of $50.00 for the work to be done on his behalf.
As to Chatellier's contention that the contract with Miller and the contract with Baer were each to be on a cost plus basis, we find no testimony except rather vague testimony by Chatellier that he ever attempted to present a bill to either Miller or Baer until November 30th, 1946, and yet he contends that under the cost plus contract the plaintiffs were to pay the labor bill each week. Miller and Baer flatly deny ever receiving any bill from Chatellier until the bill of November 30th, 1946 in which Miller is charged with 294 hours plus 15% on his contract and Baer is charged with 610 hours plus 15% on his contract. While Chatellier testifies that he attempted to present bills to Miller and Baer, it is certainly strange that if the contract was on a cost plus basis that he would not have stopped work until he could present Miller and Baer with their bills rather than to put in eight weeks work for Miller and thirteen weeks work, according to his statement, for the account of Baer. We also agree with the Trial Court's additional reasons as given in his written opinion in holding that the work on the boat was not to be done by the defendants on a cost plus basis and herewith quote those reasons:
"* * * I am, however, of the opinion that the defendant did not agree to repair the boat on a cost plus basis. * * * The reason I do not think any cost plus contract was entered into is because the defendant simply stated that he entered into the contract with Mr. Baer and Mr. Miller on a cost plus basis. Mr. Miller testified that he never entered into any contract of that nature in his life, and it is difficult for me to believe that men with the business experience of Mr. Baer and Mr. Miller would enter into a contract on a cost plus basis if they did not know how much the plus was going to be. I note on defendant's statement as rendered to Mr. Baer and Mr. Miller that he adds fifteen per cent (15%) above the cost, and, of course, the cost plus is explained in the itemized statement, but it is strange that he did not state in his answer that the cost was to be cost plus fifteen per cent (15%) nor did he testify that he told Mr. Miller or Mr. Baer that the contract would be cost plus fifteen per cent. The words cost plus do not have a definite meaning, for to my own personal knowledge many Government contracts were granted during the war for cost plus ten per cent (10%) * * *."
As Chatellier failed to sustain his contention that this contract was to be on a cost plus basis, the Court must, therefore, decide from the testimony what repairs were made, the number of hours necessary to make such repairs and a fair charge therefor.
Miller contends that all that had to be done for his account was to remove two *Page 804 
sections of bottom planking in order to repair a hole approximately 7" x 9" and refasten the strut; thoroughly clean the boat inside and out; replace tail shaft and open up the motor, clean, oil and lubricate same.
Chatellier testified that "the principal damages caused by the accident was the busting of a hole in the bottom of the boat, which resulted in having to replace four pieces of plank in the bottom; the strut was broken and bent, the wheel bent; the shaft twisted up; the inside framing to which the strut was fastened I found was rotten and broken; the keel was damaged to where it had to be taken out. That was caused by the accident."
However, on Page 28, the defendant Chatellier testified that "* * * On the hull, we found after the damaged planks were removed that Mr. Miller paid for, that the keel was rotten, broken, it was an old break, and we renewed that part of the keel from aft to the shaft lock."
Therefore, it is impossible to know from the record whether Miller was charged with the labor and material for fixing the keel. He should not have been charged with repairing the keel which had been previously broken.
Furthermore, the witness August Heisser on Page 33 testified:
"Q. What repairs can you recall that were made on that boat? A. I can tell the things I did on it. The first thing I did was to take the rudder down and the wheel (propellor) so we could take the keel out; taken out one of the tanks, the pipe out, and one tank we had to throw away, it was no good and we had to make a new one; after we got it cleared up so we could get to work on the keel, we made a new piece of keel, out of eight or ten foot lumber; replaced some frames that were bent in there; put a block strut on, it was gone; the shaft was bent; and that hole in the boat was bigger than 6 x 7 or 8 inches.
"Q. In your opinion, what was its size? A. About two feet (2') long and eight inches (8") wide. The rudder stop was all bent up, we straightened that up; straightened the wheel up; got a new bronze shaft and put it in; put in new floor boards; under the bottom planks had to be taken out and we put four long and two short ones in, those planks are all put on with screws. There is quite a difference putting planks on with screws than with nails."
The statements or bills presented to Miller for his account and the account of Baer neither one contained any material such as lumber for the purpose of making this new keel. However, the statement annexed to the defendant Chatellier's answer and petition in reconvention does show approximately sixty board measure H.T. Cypress lumber.
There is not a great deal of difference between the repairs which Miller claims were necessary on his behalf and the repairs Chatellier and the witness Heisser testify were necessary and made on behalf of Miller. Miller disputes the fact that the propellor or wheel was damaged, basing his testimony on the statement that he contends the plaintiff Chatellier had made to him, and Miller also testified that only two short blanks were necessary to repair the hole in the bottom of the boat, whereas Chatellier testified that he put in four short pieces.
On page 30 the defendant Chatellier under cross examination testified as follows:
"Q. Will you state again just what items of repairs were to be made on account of the damage caused by the sinking of this boat? A. We removed the shaft, strut, rudder, engine, sent it to the job, found several frames broken, part of which charge was made to Mr. Miller; the installing of the engine; cleaning up the boat; moving five or six barrels of sand and mud; replacing the cushions; washing and drying out; replacing the floor that had been washed away; we made new frames for one cushion which was entirely lost, so he could have a cushion made to it. Possibly a half dozen little items came up in the course of that time.
"Q. How long did it take to do that? A. The time sheet will show you.
"Q. Those items of repair which you have mentioned and you state your payroll commenced August 17th and ended November 15th; did it take that length of time to make the repairs mentioned? A. *Page 805 
That time is in straight here. You will find two hours one week, maybe more the next. The men had no definite assurance they would ever get their money."
Therefore, Miller and Chatellier and the defendant's witness, Heisser, all agree that a strut needed refastening or repairing; that the boat was to be thoroughly cleaned inside and out; that a new tail shaft should be purchased and installed; that the hole in the bottom of the boat should be repaired and that the motor should be put back in condition; the tail shaft and motor charge not being in dispute. In addition to the above, according to the testimony of August Heisser defendant Chatellier straightened up the rudder stop, straightened the propellor and put in new floor boards, how many of the latter or whether for Miller's account the record fails to disclose. The testimony fails to reveal what part of this work the various laborers were doing on the various hours and items of repair charged to Miller. In other words, the testimony does not show the exact number of hours it took to repair each separate item of damages. Mr. Reuben Chatellier, witness for defendant, testified that he spent seven hours work on the shaft and the witness August Heisser testified that he straightened the propellor or wheel of this boat and that that took four or five hours. Those are the only items that we find any testimony in the record as to the exact or approximate amount of time used to repair the various items of damage.
The plaintiff offered the testimony of Joe Innerarity who qualified as an expert and was appointed as such by the Court
as to the number of hours the repairs for Miller's account should have taken. Innerarity testified that to renew two sections of the bottom planking which resulted from the hole having been knocked in the bottom of the boat and to refasten the strut should require about 16 hours. As Chatellier says that he put in four pieces of plank rather than two, it seems reasonable that the defendant should have replaced at least one piece of plank per day which on this item would give him 32 hours rather than 16. He further testified that to thoroughly clean the boat inside and out should require about 24 hours. This certainly appears reasonable, for more water would certainly not harm the boat after it had been sunk and as it had a hole in the bottom, a strong hose would wash the sand and most of the dirt out of the boat. Innerarity testified that in replacing the tail shaft the labor should be about two hours for machining and two hours for installation. The testimony above quoted showed it took seven hours, therefore we will substitute seven hours for this item rather than four. He also testified it would take 12 hours to oil and lubricate the motor.
Also we have in the record five hours to straighten the propellor which we will allow. We believe that the extra hours which we have added to the estimate of the expert witness appointed by the Court are sufficient to cover the straightening of the propellor stop that was bent and in any event, if not, the defendant and plaintiff in reconvention should have proven exactly the number of hours required to straighten this propellor stop.
Taking the estimate as testified to by the expert witness appointed by the Court with the additions which the Court has made from the testimony, it shows a total of eighty (80) hours, which we believe was sufficient to repair all damages caused by the accident and sinking of the boat and for which Miller is responsible.
In order to arrive at an hourly rate, we believe that by adding the $1.50 per hour, the highest rate paid, and the low of 80¢ and dividing by two would give a fair average of $1.15 per hour. Miller also owed $22.39 for the motor work and $11.75 for the shaft which, although not in dispute, must be added to his bill, all of which totals $126.14. Miller is entitled to a credit of $50.00 previously paid to the defendant Chatellier, leaving a total due by Miller of $76.14.
[1, 2] We feel that in a case of this kind, the testimony of the defendant and plaintiff in reconvention Chatellier should be carefully scrutinized for the reason that the plaintiffs would be unable ordinarily to produce any evidence whatever touching upon the number of workmen employed by the defendant and the number *Page 806 
of hours actually required to repair such damage. In this case, defendant and plaintiff in reconvention has absolutely failed to prove that the contract with either Miller or Baer was on a cost plus basis as alleged by him and has failed to offer testimony as to the number of hours actually spent in repairing each separate item of damage for Miller and has therefore failed to bear the burden of proof imposed upon him by law.
As to plaintiff Baer's contract with Chatellier which plaintiff contends was not to exceed $275.00 for repairs to the boat on his behalf, there is no doubt that such a limit was imposed and that Chatellier agreed to this maximum cost. Plaintiffs Miller and Baer both testified to that limitation as well as all other witnesses for the plaintiff except Innerarity, the expert appointed by the Court. The testimony of Chatellier absolutely establishes the fact that Baer gave him a list of repairs to be made for his account with the stipulation that he would not pay for such repairs more than $250.00 to $275.00.
The testimony of Chatellier on Pages 27 and 28 of the transcript is as follows:
"Q. Did Mr. Baer call at your shipyard? A. Mr. Baer came only one time in my yard. That was the latter part of October and he came with his wife and daughter. I did not think anybody else was along.
"Q. What was your conversation with Mr. Baer regarding the prospective repairs to be made on the boat? A. I called Mr. Baer to come down, as I did not want anybody else to authorize the work. He came down. Mr. Miller and Mr. Willis authorized this work, but limited it to $250.00 or $275.00. I showed Mr. Baer the other things to be done. One gas tank was entirely gone and there was a multitude of other things. Mr. Baer wanted his boat refinished, fixed in fine shape. His wife called his attention to a boat there, said 'Look at that beautiful boat there. Fix it like that one.' She had reference to Mr. Hoffman's boat. She called his attention and mine to the glasses. She was assured the glasses would be ground. It was necessary to buy special slides, there is a bill here for it, to remodel and reinstall the entire inside of this boat.
"Q. Was there any understanding you had with Mr. Baer to the effect that the maximum price which he was to pay for repairs would be the sum total of $250.00?
A. No, sir.
"Q. Did Mr. Baer direct you to go on and make the repairs? A. He did."
This conversation which Chatellier testified to did not take place until "the latter part of October" and by referring to the bill rendered to Baer and annexed to plaintiff's petition, Chatellier at that time had already worked approximately nine weeks on the boat for Baer's account and his bill for those nine weeks as shown by the statement totalled approximately $492.90. Chatellier contended that at this meeting in the latter part of October that the price of $250.00 to $275.00 "passed by the wayside." No one was present other than Baer and his wife. Baer, in effect, denies that he authorized any additional repairs or changed the limitation of from $250.00 to $275.00. Mrs. Baer, who was present at the time referred to by Chatellier, was unable to testify but it was admitted she would corroborate her husband's testimony. There is nothing in the testimony to corroborate Chatellier in his contention that Baer's original contract "passed by the wayside."
There is nothing wrong with Mrs. Morrison's testimony in any respect. She was a witness offered by plaintiff. The defendant is depending on certain portions of it and denying others. There is no reason to look upon her as such an interested witness as to consciously or unconsciously cause her to color her testimony. A portion of her testimony on page 15 is as follows:
"Q. Do you know anything about a conversation with Mr. Chatellier about the price Mr. Baer was willing to pay? A. Yes, Mr. Baer told me to wait a few days and then call up Mr. Chatellier to see how the boat was coming along. So I had one of those copies and from time to time I would take the copy and call up to see how that particular part of the boat was coming on. I talked with Mr. Chatellier *Page 807 
several times and every time Mr. Baer had me tell Mr. Chatellier not to go over $250.00.
"Q. You did communicate that message? A. Oh, yes, positively. Later on Mr. Chatellier at one time told me of the canvas and material he had bought for Mr. Baer's job and that it was going to cost plenty. That it all he said. * * *"
Defendant contends that that portion of Mrs. Morrison's testimony in which she said that "later on Mr. Chatellier at one time told me of the canvas and material he had bought for Mr. Baer's job and that it was going to cost plenty" is conclusive proof that Chatellier had not accepted a definite or maximum price.
There is a list of material annexed to the bill presented to Miller for Baer and the total of all materials furnished and installed for Baer amounts to only $78.42. In comparison, the labor charge as shown by said statement to place this small amount of material on the boat amounts to $619.25. The canvas shown thereon amounts to only $13.59. Chatellier also contends that the work for Baer required 610 hours, and we note that the expert witness Innerarity testified that he had actually built a boat larger than the boat involved in this case from the keel up in approximately 500 hours. It is not reasonable that such a small amount of canvas and other material would cause this job to "cost plenty," that is, $619.25 or require 610 hours.
[3] As the defendant and plaintiff in reconvention Chatellier admitted that the plaintiff Baer had placed a limit of $275.00 on the repairs to be done on his behalf, and as the defendant Chatellier has failed to prove that this limitation was removed, we are therefore of the opinion that the plaintiff Baer is indebted to the defendant Chatellier in the sum of $170.00 which amount Baer deposited in the registry of the Court. Chatellier has failed to prove his claim against Baer as required by Article 2277 of the Civil Code.
It is ordered that the judgment of the Lower Court be amended and re-cast as follows:
That there be judgment in favor of Michael S. Baer decreeing that the amount of $170.00 deposited in the registry of the Court by him is the correct amount due by him and that the said amount be paid to M.F. Chatellier to whom it is due and that the boat sequestered be returned to the owner Baer.
It is further ordered that there be judgment in favor of M.F. Chatellier and against the plaintiff, Benjamin W. Miller, in the full sum of $76.14 with legal interest from judicial demand until paid.
It is further ordered that all costs of Court in both Courts be divided equally between M.F. Chatellier and Benjamin W. Miller.